**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

WATERSTONE MORTGAGE CORPORATION,

             Plaintiff,

vs.

OFFIT KURMAN, LLC; and OFFIT KURMAN,
P.A.,

             Defendants.

**Case No. 3:17-cv-796**

**COMPLAINT**

**SUBJECT MATTER JURISDICTION AND VENUE**

1.       This Court's subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1332

in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

costs, and is between citizens of different States.

2.       Venue in proper in this Court under 28 U.S.C. § 1391(b)(1) in that all defendants

are residents of this judicial district for purposes of venue, and under 28 U.S.C. § 1391(b)(2) in

that a substantial part of the events or omissions giving rise to the claim(s) herein occurred in this

judicial district.

**THE PARTIES**

3.       Plaintiff WATERSTONE MORTGAGE CORPORATION (hereinafter

"Waterstone") is a corporation that is, and at all times material to this Complaint was,

incorporated in the State of Wisconsin.  Waterstone's principal place of business is, and at all

times material to this Complaint was, located in the State of Wisconsin.

4.      Defendant OFFIT KURMAN, LLC is a limited liability company organized under the laws of the State of Maryland, with its principal place of business in the State of Maryland. OFFIT KURMAN, LLC is a law firm that, through its managers, members, and/or employees, engages in the practice of law.

5.      Defendant OFFIT KURMAN, P.A. is a corporation that is incorporated under the laws of the State of Maryland, with its principal place of business in the State of Maryland. OFFIT KURMAN, P.A. is a law firm that, through its shareholders, officers, and/or employees, engages in the practice of law.

## FACTUAL ALLEGATIONS

6.      Waterstone is a mortgage lender.  Waterstone retained Defendants to provide legal advice and legal services regarding employment agreements between Waterstone and its employees.

7.      Before retaining Defendants as its attorneys, Waterstone's employment agreements with its Loan Officers ("LOs") treated the LOs as employees who were exempt from overtime pay under the federal Fair Labor Standards Act ("FLSA").

### Defendants' Re-Drafting of Waterstone's Employment Agreements

8.      After retaining Defendants as its attorneys, Defendants recommended that, based on an opinion letter from the U.S. Department of Labor, Waterstone change its employment agreements so as to treat the LOs as non-exempt under the FLSA.  Specifically, it was Attorney Ari Karen ("Karen") and/or Attorney Russell Berger ("Berger") at the Offit Kurman law firm that provided this legal advice.

9.      Based on that advice, Defendants drafted new employment agreements for Waterstone's LOs to execute.

10.     The new employment agreements, drafted by Defendants, stated, among other things, that Waterstone would pay the employee minimum wage for all hours worked in a given week up to 40 hours, and would pay the employee overtime for all hours worked in a given week in excess of 40 hours.

11.     The new employment agreements, drafted by Defendants, also included an arbitration provision that stated, in pertinent part:

> This Agreement is made and entered into in the State of Wisconsin and shall in all respects be interpreted, enforced, and governed by and in accordance with the laws of the State of Wisconsin.  In the event the parties cannot resolve a dispute by the ADR provisions contained herein, any dispute between the parties concerning the wages, hours, working conditions, terms, rights, responsibilities or obligations between them or arising out of their employment relationship shall be resolved through binding arbitration in accordance with the rules of the American Arbitration Association applicable to employment claims.  Such arbitration may not be joined with or join or include any claims by any persons not party to this Agreement.

**The *Herrington* Action**

12.     On November 28, 2011, Patricia Herrington, who at the time was a former LO at Waterstone, filed a lawsuit against Waterstone in the United States District Court for the Western District of Wisconsin, entitled *Herrington v. Waterstone Mortgage Corporation*, Case No. 3:11-cv-00779 (hereinafter "*Herrington* action").  The Herrington action was filed as a class action by Herrington individually and on behalf of all others similarly situated.

13.     Defendants agreed to represent Waterstone in the *Herrington* action.  In particular, the Defendants' members, officers, and/or employees who conducted the defense of Waterstone were Karen and Berger.  Karen is, on information and belief, admitted to practice in Maryland, the District of Columbia, and Georgia.  Berger is, on information and belief, admitted to practice in Maryland.  Karen and Berger were both admitted to this Court *pro hac vice* for

purposes of representing Waterstone in the *Herrington* action.

14.     Defendants and their officers, members, and employees never discussed with Waterstone that they may have had a conflict of interest in representing Waterstone in the *Herrington* action. Waterstone was therefore unable to make an informed decision whether to have Defendants, rather than other attorneys, defend Waterstone in that action.

15.     Waterstone's principal place of business is located in Waukesha County, which sits within the territory for the United States District Court for the Eastern District of Wisconsin. Herrington worked for Waterstone in Scottsdale, Arizona, meaning that she labored for Waterstone in Arizona.  To any extent that Herrington labored for Waterstone in the State of Wisconsin, she labored for Waterstone in the Eastern District of Wisconsin, based on the location of Waterstone's principal place of business.  The *Herrington* action was filed in the United States District Court for the Western District of Wisconsin.  The Complaint in the *Herrington* action alleges: "Upon information and belief, Defendant WATERSTONE resides in this district."  That is incorrect.  The Complaint in the *Herrington* action also alleges: "Plaintiff labored for Defendant within this District."  That is incorrect.  The Complaint in the *Herrington* action also alleges: "The cause of action set forth in this Complaint arose in this District."  That is incorrect.

16.     Defendants knew, at the time they first learned of the *Herrington* action, that the Western District of Wisconsin was the wrong Court for that action.  Defendants never discussed with Waterstone whether it would be beneficial to seek to transfer the *Herrington* action to the Eastern District of Wisconsin, and never sought to have the action transferred there. Defendants thereby deprived Waterstone of the opportunity to make an informed decision whether to seek transfer of the action to the Eastern District of Wisconsin.

**<u>Defendants' Motion to Dismiss or Compel Arbitration</u>**

17.     In December 2011, on Waterstone's behalf and acting as Waterstone's attorney, Defendants prepared and filed a Motion in the *Herrington* action requesting that the Court dismiss the action, or alternatively, to compel arbitration, based on the arbitration provision in the employment agreement that Herrington (and other LOs) signed ("Arbitration Motion").  This is the same arbitration agreement that Defendants drafted for Waterstone.  Waterstone also argued in this Motion that the arbitration could not proceed as a class or collective action because of the language prohibiting such action in the arbitration clause in the employment agreement.

18.     Before filing the Arbitration Motion, Defendants did not discuss with Waterstone the potential advantages and potential disadvantages of pursuing arbitration, or the advantages or disadvantages of allowing the *Herrington* action to proceed as a lawsuit.  Waterstone was therefore unable to make an informed decision as to whether to demand arbitration, or whether to allow the lawsuit to proceed.

19.     In January 2012, before the Court decided the Arbitration Motion, the National Labor Relations Board ("NLRB") issued a decision concluding that an employer, D.R. Horton, Inc., had violated the NLRA by requiring its employees to sign an arbitration agreement that, among other things, prohibited an employee from pursuing claims in a collective or class action.

20.     In opposing the Arbitration Motion, Herrington raised this D.R. Horton decision and argued that the action must be permitted to proceed as a class or collective action, even if the Court compelled arbitration.

21.     At no time during the briefing or argument of the Arbitration Motion did Defendants cite the United States Supreme Court decision in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S.Ct. 1758 (2010).  That case held that a party may not be

compelled under the Federal Arbitration Act ("FAA") to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so.

22.     Instead, in a supplemental brief relating to the Arbitration Motion, Defendants stated that, if the Court found the class and collection action waiver in the employment agreement, the Court should still compel arbitration and should allow the matter to proceed as a collective action in arbitration. Specifically, Defendants wrote: "Furthermore, … even if the this [sic] Court agrees with Plaintiff that the collective action prohibition of the Employment Agreement was invalid, this Court still ought to compel arbitration. If the collective action prohibition is determined to be invalid, it can easily be severed from the otherwise valid and enforceable arbitration provision, allowing for a collective action in arbitration."

23.     At no time before filing the supplemental briefing stating that did Defendants ever discuss with Waterstone the potential advantages and potential disadvantages of proceeding with a collective action in arbitration. Defendants never obtained Waterstone's authority to agree to a collective action in arbitration. Defendants thus gave Waterstone no opportunity to make an informed decision whether to allow the case to proceed as a collective action in arbitration.

24.     The Court in the *Herrington* action ruled that Herrington's claims must proceed via arbitration, pursuant to the arbitration clause in the employment agreement. However, the Court severed the language in the employment agreement prohibiting collective or class proceedings, finding that language inappropriate in light of the NLRB's decision in the D.R. Horton matter.

25.     Following the NLRB's D.R. Horton decision, the United States Fifth Circuit Court of Appeals held that class and collective action waivers can be valid. *See*, *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 348 (5th Cir. 2013). However, the United States Seventh Circuit

Court of Appeals held that class and collection action waivers are improper.  *See*, *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016).  The issue is currently pending before the United States Supreme Court.

26.     However, if the United States Supreme Court holds that contractual class and collective action waivers are valid, Waterstone's efforts to appeal the ruling in the Herrington action could be more complicated because Defendants agreed in the supplemental brief for the Arbitration Motion to have the case proceed as a collective action in arbitration.

27.     Defendants failed to file a prompt and immediate appeal of the Court's ruling that Herrington's claims must be permitted to proceed in arbitration as a collective or class proceeding.  To the extent an immediate appeal was not available as a matter of right, Defendants failed to request, pursuant to 28 U.S.C. § 1292(b), that the Court certify the matter for appeal.

28.     Defendants did not fully discuss with Waterstone the advantages or disadvantages of pursuing an immediate appeal – either as a matter of right or pursuant to a request under 28 U.S.C. § 1292(b).  As a result, Waterstone was denied the opportunity to make an informed decision whether or not to pursue that immediate appeal.  The matter proceeded to arbitration as a collective proceeding when that could potentially have been avoided by an immediate appeal. This allowed Defendants to bill Waterstone a significant amount in attorney's fees that might have been avoided by an immediate appeal.

**Collective Arbitration**

29.     The *Herrington* action proceeded to arbitration before the American Arbitration Association.  The assigned arbitrator was the Hon. George Pratt.

30.     On July 11, 2012, the Arbitrator issued a decision entitled "Partial Final Award on Clause Construction."  Interpreting the arbitration clause in Herrington's employment agreement, the Arbitrator ruled that the employment agreement allowed the arbitration to proceed as a collective action.

31.     For that ruling, the Arbitrator relied, in part, on the Court's ruling that the class and collective action waiver in the employment had to be severed from the arbitration clause because of the NLRB's decision in the D.R. Horton matter.

32.     The Arbitrator also relied, in part, on the language of the arbitration provision. According to the Arbitrator, even without the severing of the class and collective action waiver, the arbitration provision evidenced an intent on the part of Waterstone to permit class or collective actions.  The Arbitrator stated: "the parties agreed that any dispute would be 'resolved through binding arbitration in accordance with the rules of the American Arbitration Association applicable to employment claims'.  (Agreement § 13).  Thus, the agreement was more than simply to submit the dispute to the arbitrator.  It was an agreement to arbitrate the dispute under those rules of the AAA that are applicable to employment claims.  The AAA does have a set of rules that are expressly 'applicable to employment claims'.  They are entitled 'Employment Arbitration Rules and Mediation Procedures.'  Waterstone argues that only those rules apply."

33.     The Arbitrator stated further: "The AAA, however, also has Supplementary Rules for Class Arbitrations, which 'shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association ("AAA") where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules.'  (Supplementary Rules 1(a))."

34.     The Arbitrator stated further: "Thus, the Supplementary Rules supplement the Employment Rules, and by agreeing to arbitrate under the AAA rules, Waterstone agreed to all of its applicable rules – both the Employment Rules and the Class Arbitration rules.  Together, they constitute the AAA rules that are 'applicable to employment claims.'"

35.     The Arbitrator stated further: "Furthermore, by providing in its Agreement for arbitration 'in accordance with the rules of the American Arbitration Association', which rules include the Supplementary Rules for Class Arbitrations, and at the same time by including in the same paragraph the waiver clause, Waterstone at the very least created an ambiguity, which must be construed against the party who drafted the Agreement – Waterstone."

36.     The Arbitrator therefore found a basis to allow class or collective arbitration based on the arbitration provision in the employment agreement that Defendants drafted.  The Arbitrator concluded that the arbitration provision Defendants drafted for Waterstone permitted class or collective arbitration irrespective of the D.R. Horton decision and whether the FLSA permits or prohibits class arbitration waivers.

**The Surveys**

37.     The plaintiffs in the *Herrington* action convinced the Arbitrator to allow additional depositions to be conducted so as to support their claim that the Arbitrator should certify the arbitration as a class or collective proceeding.  The plaintiffs also requested that the Arbitrator agree to allow surveys to be sent out to current and former employees of Waterstone.

38.     Class surveys are specialized and particularized documents.  Defendants did not adequately oppose the *Herrington* plaintiffs' efforts to seek the Arbitrator's approval of the use of surveys, and did not adequately argue that, if surveys were to be sent, they should be drafted by experts in the field of surveys, and not by counsel for the *Herrington* plaintiffs.  Defendants

also did not take adequate steps to ensure that the surveys included questions that would assist Waterstone's defense of efforts to certify the arbitration as a class or collective proceeding, and defense of the *Herrington* action generally, and not just the *Herrington* plaintiffs.

39.     From the outset of the *Herrington* action, Defendants repeatedly told Waterstone that the claim under the FLSA lacked merit.  According to Defendants, Herrington and the members of the purported Class were subject to the Outside Sales Exemption to the FLSA contained in 29 U.S.C. § 213(a)(l) ("OSE") because they were primarily engaged in the sale and origination of new loans for Waterstone, and that they were customarily and regularly engaged in sales work away from any of Waterstone's places of business.

40.     Defendants could and should have made efforts to ensure that the surveys included questions that addressed issues related to the OSE.  Defendants did not ensure that the questions in the survey adequately addressed the OSE and Waterstone's other defenses. Defendants' failure to ensure that the surveys adequately addressed the OSE prevented Waterstone from being able to defeat the Herrington plaintiffs' efforts to have the arbitration certified as a collective proceeding.

**<u>Defendants' Recommended Revisions to the LO Employment Agreements</u>**

41.     During the course of the *Herrington* action, including the arbitration process, Defendants recommended to Waterstone that the employment agreement—the one Defendants drafted—Waterstone utilizes for LOs, be amended to replace the arbitration agreement with different provisions.  Defendants recommend that this revised or amended agreement have the Waterstone employees agree to elect one of two options, known as "Option A" and "Option B." Based on Defendants' recommendation and legal advice, Waterstone agreed to allow Defendants to draft and implement the amendment to the LO employment agreements.  Defendants

wrongfully failed to advise Waterstone to obtain the advice of independent counsel before amending the agreement, thus depriving Waterstone of the ability to make a meaningful and fully informed decision as to whether or not to amend the agreement.

42.     The amendment allowed the employee to elect which of the two Options would be effective in that individual employee's agreement.

43.     By electing Option A, the employee would agree to arbitrate the dispute in the *Herrington* action before JAMS, rather than AAA.  Option A also permitted joinder of other employees or former employees pursuant to Federal Rules of Civil Procedure 20 and 24.

44.     One of Defendants' goals in drafting Option A this way was to circumvent the Arbitrator's determination that the employment agreement Defendants had drafted previously permitted class or collective arbitration.  Option A as drafted by Defendants did not achieve this goal because, while Option A permitted joinder, there was nothing in Option A, as drafted by Defendants, that demonstrated the specific intent to ***preclude*** class or collective arbitration.  This not only defeated the objective of re-drafting the employment agreement so as to preclude class or collective arbitration, but through removal of the class waiver, it also negatively impacted the ability to appeal the Court's decision that class waivers are prohibited under the FLSA.

45.     Another goal of Defendants, as seen in the provision in Option A that would require arbitration before JAMS rather than AAA, was to circumvent Arbitrator Pratt, whose decisions up to that date had been negative to the arguments Defendants made on Waterstone's behalf.

46.     Option A, as drafted by Defendants, was also ineffective to compel arbitration because Defendants included the following statement in Option A: "Nothing herein shall preclude or limit Employee from filing any complaint or charge with a State, Federal, or ***Court***

agency."  This therefore allowed an employee or former employee who chose Option A to file a lawsuit in court.

47.     Defendants claimed later that the word "Court" was a typo, and was supposed to state "County" agency.  Defendants attempted to blame Waterstone for this error, claiming that Defendants had indeed written "County," and that it was changed to "Court" only after the drafted amendment was forwarded to Waterstone.  However, tracing of the electronic versions of the document establishes that Defendants—not Waterstone—did in fact draft the amendment to include the word "Court."

48.     Option B did not include an arbitration provision.  It permitted any employee or former employee who elected Option B to file a lawsuit, but it required that the lawsuit be filed in the United States District Court for the Western District of Wisconsin.  The lawsuit could only be filed in a different Court if the Western District lacked subject matter jurisdiction.

49.     As noted above, Waterstone's principal place of business is in Waukesha County, which sits within the Eastern District of Wisconsin.  Defendants knew that a proper forum for any litigation with Waterstone's employees or former employees would be the Eastern District. While drafting the amendment, Defendants never discussed with Waterstone whether it would be more beneficial to Waterstone, in Option B, to specify the Eastern District as the forum for litigation.  Defendants thereby prevented Waterstone from making a meaningful and fully informed decision whether, in Option B, to specify the Eastern District as the forum for litigation.

50.     Defendants then proceeded to bill Waterstone for re-drafting the employment agreement in this fashion, despite the fact that it was Defendants' drafting of the preceding employment agreement that resulted in the Arbitrator's determination that the terms in that

agreement permitted class or collective arbitration, which was an unfavorable result for Waterstone.

**Sanctions Imposed on Waterstone Because of Defendants' Conduct**

51.    Defendants' conduct also resulted in Waterstone being sanctioned several times during the arbitration process.

52.    On one such occasion, Waterstone was sanctioned by the Arbitrator because of Defendants' efforts to re-draft the employment agreements to contain an Option B that would require arbitration through JAMS and circumvent any arbitration with Arbitrator Pratt through AAA.  Waterstone was forced to pay this sanction despite the fact that it resulted from Defendants' recommendations and actions.

53.    Following that sanctioning, Defendants knew or should have known that their ability to litigate effectively before Arbitrator Pratt had been compromised because of the Arbitrator's belief that Defendants had engaged in improper conduct.  However, Defendants never discussed with Waterstone whether it may be advisable for Defendants to withdraw and for Waterstone to engage new counsel to represent it in the *Herrington* action and the arbitration. Waterstone was therefore deprived of an opportunity to make an informed decision as to whether or not to continue having Defendants represent Waterstone.

54.    Another instance in which Waterstone was also sanctioned stemmed from a series of events after Waterstone closed down one of its branches and laid off approximately 30 of the LOs.  Waterstone executed severance agreements with those laid-off LOs wherein the LOs would release their claims against Waterstone that were encompassed in the *Herrington* action. However, Defendants never advised or recommended to Waterstone that any proposed severance agreements disclose the existence of the *Herrington* action (and related arbitration) to those laid-

off LOs.  Arbitrator Pratt was displeased with the fact that Waterstone attempted to obtain releases from the laid-off LOs without notifying them of the Herrington action and released arbitration.  Defendants should have known to advise Waterstone to disclose the *Herrington* action in these severance agreements.

55.     Arbitrator Pratt thus ordered that Waterstone could not communicate with its employees without first vetting those proposed communications through the Arbitrator. Defendants violated that order, and Waterstone was sanctioned.

56.     In addressing the Arbitrator's decision to impose sanctions in this instance, Defendants failed to address with the Arbitrator the fact that, before an employee or former employee opted in to the arbitration, the Arbitrator lacked jurisdiction or authority to regulate Waterstone's communications with those employees and former employees.  Defendants' failure to recognize the Arbitrator's lack of jurisdiction or authority in that regard, and their failure to address that with the Arbitrator, not only resulted in Waterstone being sanctioned when it should not have been, but it also unlawfully interfered with Waterstone's ability to communicate with its employees and former employees.

**Defendants' Advice and Lack of Advice on Potential Settlement**

57.     From the outset of the *Herrington* action, Defendants repeatedly told Waterstone that the claim under the FLSA lacked merit because of the OSE.

58.     Although the employment agreement contained terms that complied with the FLSA, Defendants assured Waterstone that the FLSA did not apply to the employment agreement because of the OSE.  Defendants consistently explained to Waterstone that the OSE was "unwaivable."  Defendants therefore represented to Waterstone that the fact that the employment agreements Defendants drafted contained language that attempted to comply with

14

the FLSA would not prevent the OSE from applying to the *Herrington* action.

59.     From the outset of the *Herrington* action, based on Defendants' evaluation of the OSE, Defendants consistently advised Waterstone that the FLSA claim lacked merit, and that the plaintiffs' only potential recovery in the case would be on the state-law contract claims. Defendants consistently advised Waterstone that its maximum exposure was in the range of $300,000.

60.     Defendants represented to Waterstone that they were highly experienced with litigation.  As supposedly experienced trial lawyers, Defendants knew or should have known that no position taken in litigation is guaranteed to prevail.  Defendants should have recognized the potential that a court or arbitrator would conclude that the OSE ***could*** be waived.  Defendants should have better and more carefully explained the risks of the *Herrington* action and Waterstone's potential ranges of exposure.

61.     During the course of the arbitration, Defendants prepared and filed a motion for summary judgment, arguing that the FLSA claim lacks merit as a matter of law because of the OSE.

62.     In opposing that motion, counsel for Herrington and the others presented legal authority that counsel contended precluded application of the OSE in this case.  Herrington's counsel argued waiver and estoppel: that 1) Waterstone had waived the OSE by including FLSA language in the employment agreements with the LOs; and 2) Waterstone should be estopped from asserting the OSE because of that language in the employment agreements.

63.     Even after this opposition was filed, Defendants continued to advise Waterstone that the OSE was unwaivable.

64.     The Arbitrator denied the motion for summary judgment.  He concluded that there was a triable issue of fact as to whether Waterstone waived the OSE through the FLSA language in the employment agreements, and whether Waterstone should be estopped from asserting the OSE because of that language.  In so ruling, the Arbitrator cited the same authority relied on by Herrington's counsel in the opposition to the motion.

65.     At that point, if not before, Defendants knew or should have known that there was a substantial risk that the plaintiffs in the *Herrington* action (and arbitration) might prevail on the FLSA cause of action.  Defendants knew that the Arbitrator had concluded that the OSE was ***not*** unwaivable, and from the Arbitrator's reliance on and citation to the same legal authority presented by the plaintiffs' counsel, Defendants knew or should have known that the Arbitrator might be more inclined to rule in plaintiffs' favor on the waiver and estoppel issue.

66.     Even following the denial of the motion for summary judgment, Defendants did not alter their assessment to Waterstone of Waterstone's potential exposure in the case, continuing to advise that the maximum exposure was in the range of $300,000, and that Waterstone should not agree to any settlement offer of more than $1 million.

67.     Before the Arbitrator's final award, Waterstone was presented with multiple opportunities to settle the *Herrington* action.  One settlement demand from the plaintiffs was for $1.8 million, plus any attorney's fees to be awarded by the Court or Arbitrator, capped at $890,000.  That means Waterstone could have settled the case for potentially as little as $1.8 million, but for an amount that did not exceed $2,690,000.

68.     At the time Waterstone had the opportunity to settle as specified in the preceding paragraph, the Arbitrator had already denied the motion for summary judgment regarding the OSE, and had thus already informed Defendants that there was a triable issue of fact whether

16

Waterstone had waived the OSE through the language in the employment agreement, and whether Waterstone was estopped by that language from asserting the OSE as a defense to the FLSA claim.

69.     Nevertheless, in discussing settlement strategies with Waterstone, Defendants continued to advise Waterstone of their opinion and view that the FLSA claim lacked merit, that Waterstone's only exposure in the *Herrington* action was on the state-law contract claims, and that Waterstone's maximum exposure in the case was $300,000.

70.     Waterstone did not accept the settlement demand, outlined above, based on Defendants' advice and assessment of the exposure in the *Herrington* action.

### Defendants' Stipulation about Hours Worked and Unreimbursed Expenses

71.     During the arbitration, Defendants stipulated that the Waterstone LOs all worked 52 hours per week, and all had $100 per week in unreimbursed business expenses.  This stipulation prevented Waterstone from being able to de-certify the arbitration as a collective proceeding based on evidence that at least some LOs did not work 52 hours per week or have $100 per week in unreimbursed business expenses.

72.     Defendants did not adequately discuss with Waterstone the potential advantages and disadvantages of stipulating that Waterstone LOs worked those hours or had that amount in unreimbursed business expenses.  Waterstone was deprived of the opportunity to make a meaningful and informed decision whether to stipulate to those alleged facts.

73.     Defendants also failed to take other steps that could have shown a lack of commonality among the LOs and that could thus have assisted in having the arbitration de-certified as a collective proceeding.

**Defendants' Advice Not to Modify the Employment Agreements**

74.     As noted above, Defendants recommended an amendment to the arbitration provisions of the LO employment agreement to allow for Option A and Option B.  During the course of the *Herrington* action, Waterstone asked Defendants if other parts of the employment agreement, including those relating to LO compensation, should be revised so as to apply to any claims by other Waterstone LOs in the future that would be similar to the claims being made in the *Herrington* action.

75.     Defendants advised and recommended against making such revisions, claiming that this could be deemed an admission of guilt.

76.     Because the employment agreements were not revised, the same attorneys for the plaintiffs in the *Herrington* action filed a new and separate lawsuit against Waterstone on behalf of other Waterstone LOs who worked for Waterstone after the period at issue in the *Herrington* action.  This new action is currently pending in the United States District Court for the Western District of Wisconsin, and is entitled *Werner v. Waterstone Mortgage Corporation*, Case No. 3:17-cv-00608-jdp (the *Werner* action").

**Result of Arbitration in the *Herrington* Action**

77.     The Arbitrator issued his Partial Final Award on Liability on April 13, 2017.  The Arbitrator issued his Decision and Partial Final Award on Damages on June 12, 2017.  The Arbitrator issued his Decision and Partial Final Award on Attorney's Fees and Costs on July 5, 2017.  The Arbitrator issued his Final Award on July 5, 2017.

78.     The Arbitrator found Waterstone liable on the FLSA claim.  In connection with that determination, the Arbitrator concluded that the *Herrington* plaintiffs did, in fact, qualify for the OSE, but that Waterstone waived the OSE through the language in the employment

agreements, and that Waterstone was estopped from asserting the OSE as a defense to the FLSA claim based on that language.  The Arbitrator found that Waterstone was not liable on the two state-law contract claims.

79.     The Arbitrator awarded damages in the amount of $7,267,919.  The Arbitrator awarded attorney's fees and costs in the amount of $3,318,851, which includes a $20,000 incentive fee for Pamela Herrington.  The Final Award also stated: "The administrative fees of the AAA, totaling $18,175.00, and the compensation and expenses of arbitrator totaling $438,077.94, are to be borne by Waterstone Mortgage Corporation."  The total amount of Waterstone's liability under the Final Award therefore totals $11,043,022.94.

**Defendants' Unreasonable Delay in Producing Waterstone's File**

80.     Defendants were eventually replaced with other attorneys, and Defendants withdrew from representing Waterstone in the *Herrington* action.  After that withdrawal, Waterstone demanded on several occasions that Defendants promptly produce to Waterstone their client file for Waterstone, as required by the Rules of Professional Conduct of both Maryland (where Attorneys Karen and Berger and other attorneys working for Defendants are licensed) and Wisconsin.

81.     Defendants did not respond to Waterstone's first demand for its file for two weeks.  In that response, Defendants stated that they needed an additional 30 days to produce the file.  Waterstone wrote back, indicating that Waterstone urgently needed the file because of the two pending lawsuits against Waterstone.  Defendants ignored that letter and did not reply.

82.     Defendants' own 30-day deadline came and went, and Defendants still did not produce the file.  More than two months after Waterstone first demanded its file, Defendants finally produced a small portion of its file.  Considerable portions of that file were still missing.

When Waterstone demanded the entire file, Defendants responded by stating that they are not required to produce the entire file.  Defendants provided no legal authority for that statement, and in fact that statement is contrary to the Rules of Professional Conduct.   As of the date of the filing of this Complaint, Defendants have still not produced their entire file.

## FIRST CAUSE OFACTION

## PROFESSIONAL NEGLIGECE

83.     Waterstone incorporates paragraphs 1 through 82, inclusive, as though fully set forth herein.

84.     Defendants entered into an attorney-client relationship with Waterstone. Defendants therefore owed a duty to Waterstone to exercise reasonable care and to use such skill, prudence, and diligence that an attorney commonly possesses and exercises.

85.     Defendants breached their duty of care, and their conduct fell below the applicable standard of care, in multiple regards, including but not limited to the following:

a.     Defendants negligently advised Waterstone to change their existing employment agreements;

b.     Defendants negligently drafted the new employment agreements for Waterstone in a way that included FLSA terms when in fact the LOs were exempt from the requirements of the FLSA under the OSE;

c.     Defendants negligently drafted the new employment agreements in that the provisions Defendants drafted did not account for other exemptions to the FLSA that the LOs qualified for;

d.     Defendants negligently drafted the arbitration provision in the employment agreements for Waterstone in that the class and collective action waiver language

was ambiguous in light of inclusion of the provision for arbitration "in accordance with the rules of the American Arbitration Association", which rules include the Supplementary Rules for Class Arbitrations;

e.       Defendants acted negligently in that, in the Supplement Brief relating to the Arbitration Motion, Defendants agreed to a collective arbitration, which may complicate an appeal that attempts to enforce the class waiver based on a potential ruling from the United States Supreme Court stemming from the NLRB's *D.R. Horton* ruling;

f.       Defendants negligently failed to cite the *Stolt-Nielsen* case in the briefs and arguments supporting the Arbitration Motion, and failed to assert the position that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so;

g.       Defendants negligently failed to discuss with Waterstone the potential of an immediate appeal of the Court's Order on the Arbitration Motion, and negligently failed to take steps that could have secured an immediate right of appeal and therefore prevented the expense and exposure of the arbitration proceedings that followed that Order;

h.       Defendants negligently drafted the amendment to the LO employment agreements by failing, in Option A, to include provisions that would adequately preclude class or collective arbitration, by including the word "Court" in Option A such that an employee could elect Option A and still pursue court litigation, and by compelling litigation, in Option B, in the United States District Court for the Western District of Wisconsin, without fully and adequately assessing whether that would be the proper and best forum for Waterstone's interests;

i.       Defendants negligently drafted the amendment to the LO employment agreements through their effort, in Option A, to circumvent AAA and Arbitrator Pratt, so as to

cause animosity toward Waterstone on the part of Arbitrator Pratt, without even considering, much less predicting adequately, that this could be the result;

       j.     Defendants were negligent in failing to identify and address the conflict of interest they had in representing Waterstone in the *Herrington* action while also being in the position of having an interest in defending their work product in the drafting of the employment agreements at issue in that action;

       k.     Defendants were negligent in addressing various matters, as outlined above, in a way that caused Waterstone to be sanctioned, and also in a way that made it so Defendants could no longer effectively represent Waterstone before Arbitrator Pratt;

       l.     Defendants were negligent in addressing the *Herrington* plaintiffs' request that surveys be sent to Waterstone's current and former employees, were negligent in failing to insist upon a proper survey conducted by experts in the field, and were negligent in failing to ensure that questions were included in the surveys that were directed toward Waterstone's defense and that could have assisted Waterstone in defeating the effort to have the arbitration certified as a collective proceeding;

       m.     Defendants were negligent in evaluating generally Waterstone's potential liability under the NLRA claim in the *Herrington* action, were negligent in failing to see Waterstone's potential exposure under the NLRA claim once the Arbitrator determined there were questions of fact as to the issues of waiver and estoppel regarding application of the OSE, and were negligent in the manner in which they advised Waterstone about potential settlement strategies and decisions;

       n.     Defendants were negligent in stipulating that all Waterstone LOs worked 52 hours per-week and had $100 in unreimbursed business expenses; and

22

o.      Defendants were negligent in recommending that Waterstone not modify its employment agreement regarding LO compensation, such that Waterstone is now faced with another lawsuit (the *Werner* action) based on the original, negligently drafted agreement;

86.     As a direct, proximate, and substantial cause and result of Defendants' negligent conduct and the cumulative effect thereof, Waterstone has been damaged in an amount in excess of $75,000, the exact amount of which will be proven at trial.

## SECOND CAUSE OFACTION

## BREACH OF FIDUCIARY DUTY

87.     Waterstone incorporates paragraphs 1 through 86, inclusive, as though fully set forth herein.

88.     Defendants were in an attorney-client relationship with Waterstone, and therefore owed Waterstone a fiduciary duty.  This duty is one of the highest degree of character, honesty, and loyalty.

89.     Defendants breached their fiduciary duty to Waterstone in that, among other things:

a.      Defendants failed to identify and/or address the conflict of interest they had in representing Waterstone in the *Herrington* action in light of their interest in defending their own work product in drafting the employment agreements that were the subject of that action.  Alternatively, Defendants knew of this conflict, but refused to advise Waterstone of that conflict so it could attempt to hide their own negligence in drafting these agreements through defending the *Waterstone* action in a way that would, Defendants hoped, to prevent Waterstone to learn of that negligence. Defendants should have, at a minimum, obtained a written conflict of interest waiver and advised Waterstone to seek the advice of independent counsel on the issue of

23

representation in the litigation. Independent counsel competent in this area of the law could have immediately advised Waterstone that Defendants had negligently drafted the employment agreements and could have taken measures to prevent further loss, exposure, and attorneys' fees by contesting the plaintiffs' claims in the employment litigation.

b.      Defendants engaged in conduct that subjected Waterstone to sanctions, and then, to avoid taking responsibility – financial or otherwise – for that conduct, required Waterstone to pay those sanctions, rather than paying the sanctions themselves.  This conduct also had the effect of creating animosity on the part of the Arbitrator toward Defendants and, by extension, to Waterstone, thereby putting Waterstone at a disadvantage in the binding arbitration proceeding;

c.      Defendants failed to take steps that could have resulted in an immediate appeal of the Court's ruling on the Arbitration Motion.  In this regard, Defendants were not merely negligent, but Defendants breached their fiduciary duty because they put their own financial interests ahead of their clients' best interests in that they made this decision so as to create work for themselves involved in defending the arbitration and appealing later, thereby maximizing their billing in the *Herrington* action.

d.      Defendants failed to withdraw from representing Waterstone after the sanctions by the Arbitrator.  Defendants knew or should have known that the manner in which they had irritated the Arbitrator to the extent of his granting repeated sanctions against Waterstone, would negatively affect their ability to represent Waterstone.  Defendants likely refused to withdraw in order to avoid another attorney coming in to defend Waterstone who would then—undoubtedly—discover Defendants' negligence in drafting the employment agreements in the first place.

24

e.     Defendants put their own interests ahead of their clients in that they tried to blame Waterstone for the error in including the word "Court" in "Option A" of the amendment to the employment agreement, instead of "County."  They did this rather than what they should have done, that is: accepting and acknowledging their own error and the consequences of that error, and encouraging Waterstone to get an independent legal opinion.

f.     Despite multiple requests by Waterstone, Defendants violated the Rules of Professional Conduct of Maryland and Wisconsin in that they have refused to produce their entire client file to Waterstone in a timely manner, so as to continue in their efforts to hide their negligence and other misconduct, and thereby impairing Waterstone's ability to defend itself in the *Herrington* action and the *Werner* action.

g.     Defendants failed to adequately discuss settlement options and strategies with Waterstone, again for the purpose of hiding their own negligence in many regards.

90.    As a direct and proximate result of Defendants' conduct, Waterstone was damaged in that, among other things, Waterstone unnecessarily incurred attorney's fees and costs; Waterstone incurred and has paid attorney's fees for which it was provided little or no value; Waterstone was deprived of the opportunity of defending itself adequately in the *Herrington* action; and Waterstone was forced to pay sanctions it should not have had to incur or pay.  These damages are in an amount according to proof at trial, but in any event well in excess of the $75,000 minimum jurisdictional limits of this court.

91.    As a direct and proximate result of Defendants' conduct, Waterstone is entitled to restitution, including but not necessarily limited to disgorgement of all ill-gotten gains, such as attorney's fees to which Defendants, as a result of their conduct, are not entitled and/or did not truly earn.

92.     Defendants' conduct as outlined in detail above was fraudulent, malicious, oppressive, and despicable.  Accordingly, Defendants are liable for exemplary and/or punitive damages.

WHEREFORE, Plaintiff WATERSTONE MORTGAGE CORPORATION prays for judgment as follows:

1.     For compensatory damages in an amount to be proved at trial but in any event in excess of $75,000;

2.     Restitution, including but not limited to disgorgement of ill-gotten gains;

3.     Punitive damages in an amount sufficient to punish Defendants for its wrongful, despicable, unethical, malicious and oppressive conduct towards Plaintiff;

4.     Costs of suit herein, including reasonable attorney's fees (if Plaintiff is entitled to such fees); and

5.     Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff WATERSTON MORTGAGE CORPORATION hereby demands trial by jury.

Dated: October 20, 2017                    WOLFE LEGAL GROUP, P.C.


                                    By:   _s/ Deborah A. Wolfe_____
                                          Deborah A. Wolfe, Esq.
                                          Email: dwolfe@wolfelegalgroup.com
                                          Brian P. Worthington, Esq.
                                          Email: bworthington@wolfelegalgroup.com
                                          402 W. Broadway, Suite 400
                                          San Diego, CA 92101
                                          Telephone (619) 234-3363
                                          Fax: (619) 231-1989
                                          Attorneys for Plaintiff WATERSTONE
                                          MORTGAGE CORPORATION